# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOSEPH EVAN YORK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-17-835-BMJ |
| | ) |
| NANCY A. BERRYHILL, Deputy | ) |
| Commissioner for Operations of the | ) |
| Social Security Administration, performing | ) |
| the duties and functions not reserved to the | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant.[1] | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Joseph Evan York, brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the Social Security Administration's final decision finding he was not disabled under the Social Security Act. The parties have consented to the exercise of jurisdiction over this matter by a United States Magistrate Judge. *See* 28 U.S.C. § 636(c). The Commissioner has filed the Administrative Record (AR) [Doc. No. 14], and both parties have briefed their respective positions.[2] For the reasons stated below, the Commissioner's decision is affirmed.

## I.  Procedural Background

On March 24, 2014, Plaintiff protectively filed an application for disability insurance benefits. *See* AR 16. The Social Security Administration denied the application initially and on reconsideration. AR 86, 99. Following a hearing, an Administrative Law Judge (ALJ) issued an

---

[1] The Court notes that Nancy A. Berryhill no longer serves as Acting Commissioner of the Social Security Administration. The Court substitutes Ms. Berryhill's current title in the style of this matter. *See* Fed. R. Civ. P. 25(d) (allowing the substitution of a party when a public officer ceases to hold office while the action is pending).

[2] Citations to the parties' submissions reference the Court's CM/ECF pagination.

unfavorable decision dated November 22, 2016. AR 13-30. The Appeals Council denied Plaintiff's request for review. AR 1-6. Thus, the decision of the ALJ became the final decision of the Commissioner. *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011). Plaintiff seeks judicial review of this final agency decision.

## II.    The ALJ's Decision

The ALJ followed the sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (explaining five-step sequential evaluation process); *see also* 20 C.F.R. § 404.1520. The ALJ first determined Plaintiff had not engaged in substantial gainful activity since January 11, 2014, the alleged onset date. AR 18.

At step two, the ALJ determined Plaintiff suffered from the severe impairments of osteoarthritis, asthma, chronic obstructive pulmonary disease (COPD), degenerative disc disease of the back, degenerative joint disease of the left knee, coronary artery disease, and obesity. AR 18-20.[3] At step three, the ALJ found Plaintiff's impairments do not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 20-21.

The ALJ next determined Plaintiff's residual functional capacity (RFC), concluding:

> [Plaintiff] has the residual functional capacity to perform a less than full range of sedentary work as defined in 20 CFR 404.1567(b). [Plaintiff] can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; stand or walk for two out of eight hours; sit for six out of eight hours; never climb ladders, ropes, or scaffolds; occasionally climb stairs and ramps; and occasionally kneel, crouch, crawl, and stoop. [Plaintiff] must avoid even moderate exposure to fumes, odors, dust, and gases. [Plaintiff] must avoid concentrated exposure to extreme heat and extreme humidity.

AR 21-24. The ALJ determined Plaintiff is capable of performing past relevant work as a sales manager. AR 24. In the alternative, and relying on the testimony of a vocational expert (VE), the

---

[3] The ALJ also found Plaintiff had the non-severe impairment of anxiety. *Id.*

2

ALJ found there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform—telemarketing representative, customer complaint clerk, and order clerk. AR 24-25. The ALJ concluded, therefore, that Plaintiff was not disabled for purposes of the Social Security Act. AR 25.

### III. Issues Presented for Judicial Review

Plaintiff contends the ALJ erred in weighing the opinions of a treating physician, improperly determined Plaintiff could perform his past relevant work, and committed reversible error at step five. The Court finds the ALJ did not commit error with regard to her handling of the opinions of the treating physician or Plaintiff's past relevant work. Because the ALJ did not err in finding Plaintiff was not disabled at step four, the Court does not reach the last point of error.

### IV. Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own

judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

V. **Analysis**

   A. **The ALJ's Weighing of Dr. Nickels' Opinion**

Plaintiff contends the ALJ erred in weighing the opinions of Dr. Terry Nickels, D.O., a treating physician. Pl.'s Br. 13-17. Dr. Nickels found that Plaintiff had severe limitations on his ability to lift, sit, walk, and perform manipulative activities. AR 23, 382-389. He also found Plaintiff had environmental limitations and would miss more than four days of work per month. *Id.*

The ALJ gave Dr. Nickels' opinions little weight, stating:

> [T]hey are inconsistent with the medical record which shows that [Plaintiff's] lungs are clear to auscultation and that [Plaintiff] has full strength in all muscle groups. Moreover, although Dr. Nickels opined [Plaintiff] would have problems with asthma attacks at least twice per month, there does not appear to be any evidence of recent COPD exacerbations or asthma attacks consistent with the opinion that [Plaintiff] would miss more than four days of work per month, other than subjective reports made by [Plaintiff]. Likewise, despite such extreme limitations to sitting and standing/walking less than two hours each within an eight-hour day, as well as "rarely" lifting less than 10 pounds per day, [Plaintiff] had received limited treatment to his knee and back other than medication, and there is little objective evidence in the file from Dr. Nickels to support such extreme exertional limitations in treatment notes, particularly in light of [Plaintiff's] testimony of traveling on a cruise in 2015 and visiting his daughter in Arkansas.

AR 23 (internal citations omitted). The ALJ did not err in her analysis of the opinions.

   1. **Governing Law**

A sequential, two-step inquiry governs an ALJ's evaluation of the medical opinions of a claimant's treating physician. *Krauser*, 638 F.3d at 1330. The two-step inquiry is mandatory and each step of the inquiry is "analytically distinct." *Id.* at 1330. First, the ALJ must decide whether

4

the opinion is entitled to "controlling weight." If the opinion is "well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record," then the opinion must be given controlling weight. *Id*. A deficiency in either of these areas requires that the opinion not be given controlling weight. *Id*.

When a treating physician opinion is not entitled to controlling weight, the inquiry does not end. The opinion is still entitled to deference. Thus, at the second step of the inquiry, "the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Id*. As the Tenth Circuit has made clear: "[i]f this is not done, a remand is required." *Id*. The relevant factors governing the second step of the inquiry include: "(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion." *Id*. at 1331 (citation omitted).

The treating physician rule is founded on the treating physician's unique perspective to the medical evidence due to both the duration and frequency of the treatment relationship. *Doyal*, 331 F.3d at 762. The rule "is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Id*. (citation omitted); *see also* 20 C.F.R.

§§ 404.1527(c)(2) (addressing weight given to treating source due to his or her "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

### 2. The ALJ Properly Weighed Dr. Nickels' Opinions

Plaintiff asserts that the ALJ erred by rejecting Dr. Nickels' opinions.[4] He contends the reasoning given by the ALJ for rejecting the opinions "was legally flawed where it was not legitimate and failed to adequately address the relevant factors." Pl.'s Br. 15. Plaintiff argues that the ALJ did not consider the length and frequency Plaintiff obtained treatment from Dr. Nickels. Plaintiff also contends the ALJ did not consider evidence relevant to the limitations asserted by Dr. Nickels. Neither argument has merit.[5]

#### a. The ALJ Properly Considered the Length and Frequency of Dr. Nickels' Treating Relationship With Plaintiff

The Court first notes that the reasons stated by the ALJ for giving little weight to Dr. Nickels' opinions were appropriate.[6] The ALJ determined that Dr. Nickels' opinions were not supported by the medical evidence and were inconsistent with medical and other evidence. AR

---

[4] By giving "little weight" to Dr. Nickels' opinions, the ALJ effectively rejected it. *See Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2002).

[5] In a footnote, Plaintiff states there was evidence that he lacked insurance or sufficient funds to pay for recommended treatment. Pl.'s Br. 16, n.8. An "inability to pay may provide a justification for a claimant's failure to seek treatment." *Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003). But the records cited indicate that one provider saw Plaintiff through a "good samaritan program" and another notes that Plaintiff had been turned down for social security and Aetna disability insurance benefits, but they do not state that Plaintiff was unable to obtain recommended treatment due to finances. AR 254, 256, 326.

[6] The ALJ did not explicitly decline to give the opinions controlling weight, but such omission does not constitute reversible error. *See Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014).

23. As discussed above, these are relevant factors an ALJ should consider when determining the amount of weight to give an opinion. *Krauser*, 638 F.3d at 1331.

Plaintiff contends it was error when the ALJ did not provide "any indication that she considered Dr. Nickels' statements of having seen [Plaintiff] on a monthly basis since 2008 as offering additional support for his opinions based on the longstanding nature of their relationship." Pl.'s Br. 17. While the length and frequency of treatment with a doctor are factors an ALJ may consider, so long as the ALJ provides a well-reasoned discussion, the failure to "explicitly discuss" all the factors outlined in 20 C.F.R. § 404.1527(d) "does not prevent [the] court from according his decision meaningful review." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Furthermore, the ALJ explicitly considered Dr. Nickels to be a treating physician, which means Plaintiff had an ongoing treatment relationship with him. *See* 20 C.F.R. § 404.1502.[7] As such, the ALJ did not err by not specifically referring to the precise length and frequency of Plaintiff's treatment with Dr. Nickels.

### b. The ALJ Appropriately Considered the Evidence

Plaintiff also contends the ALJ did not consider evidence relevant to Dr. Nickels' opinions. An ALJ must "consider all evidence" in the record when making a decision and may not pick-and-choose among medical reports. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). However, where the court "can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Id.* The Tenth Circuit has cautioned that courts cannot insist on technical perfection. *Id.* The Court analyzes Plaintiff's arguments under this framework.

---

[7] Recent amendments to 20 C.F.R. § 404.1502 affecting the treating physician rule apply to claims filed after March 27, 2017.

7

The ALJ determined that Dr. Nickels' opinions were inconsistent with the record in part because his lungs were clear to auscultation. AR 23 (*citing* AR 363). The ALJ also noted that there did not appear to be any evidence—other than Plaintiff's subjective complaints—of recent COPD exacerbations or asthma attacks consistent with Dr. Nickels' opinion that Plaintiff would miss more than four days of work per month. AR 23 (*citing* 325-349, 382-389). Plaintiff asserts the ALJ did not mention several, more recent,[8] occasions on which Plaintiff had abnormalities in his respiratory status. Pl.'s Br. 16. The records cited by Plaintiff indicate trouble breathing, shortness of breath, and the presence of COPD or asthma. AR 267, 270, 311, 313, 325-327, 329, 333, 348. The ALJ, however, found that COPD and asthma were severe impairments and considered them throughout the decision. The ALJ also acknowledged that Plaintiff made subjective complaints of issues related to COPD and asthma attacks. Furthermore, the presence of a condition, even one that is deemed severe, does not necessitate the finding of work-related limitations. *See Cavalier v. Colvin*, 2014 WL 7408430, at *2 (N.D. Okla. 2014). Earlier in the decision, the ALJ addressed that Plaintiff had reduced lung capacity. AR 22. It is clear that ALJ considered evidence related to Plaintiff's ability to breathe and related conditions. Therefore, Plaintiff essentially asks the Court to reweigh the evidence—conduct in which this Court cannot engage. *See Bowman*, 511 F.3d at 1272.

Plaintiff also contends the ALJ did not consider that Plaintiff took narcotic analgesics. But the record belies Plaintiff's claim. The ALJ noted that Plaintiff took prescription medications and cited a record which lists thirteen medications, including narcotic analgesics such as Percocet and Norco. AR 22 (*citing* AR 312).

---

[8] The record cited by the ALJ was dated February 15, 2011—prior to the January 11, 2014 alleged onset date.

Plaintiff further takes issue with the ALJ's treatment of his bony deformities, severe neuroforaminal stenosis, and hip issues. He contends the ALJ ignored various records related to these conditions. But, the ALJ cited one of the records noted by the Plaintiff, stating that "imaging of [Plaintiff's] back taken in July of 2014 show degenerative changes in [Plaintiff's] lumbar spine. AR 22 (*citing* AR 319). The ALJ also generally cited the other records presented by Plaintiff as noting that the degenerative changes have existed since well before the alleged onset date. AR 22. Further, the ALJ addressed Plaintiff's reduced range of motion in his right hip and knees and cited a record indicating the degenerative changes in his hip. AR 22, 357.

Plaintiff also asserts the ALJ failed to address Plaintiff's prior knee surgeries—three to the right knee[9] to repair torn ligaments (the most recent of which occurred in 2002) and two operations to the left knee in 1991—which occurred between 1991 and 2002. AR 312. Plaintiff does not provide any functional limitations he suffers as a result of these knee surgeries, which occurred more than a decade before the alleged onset date. The ALJ considered Plaintiff's degenerative joint disease in his left knee to be a severe impairment. AR 18. She also addressed records showing that Plaintiff had a reduced range of motion in his knees imaging which showed severe tricompartmental degenerative changes in his left knee. AR 22. In other words, the ALJ addressed probative evidence related to Plaintiff's knees and the Court does not find error.

---

[9] The ALJ did not find Plaintiff had an impairment in his right knee and Plaintiff did not contend the ALJ erred in this regard.

Finally, Plaintiff contends the ALJ erred by not addressing "multiple findings" of Plaintiff's antalgic gait.[10] It is true that the ALJ did not directly address any of the three instances in which Plaintiff's antalgia or antalgic gait appear in the medical record. But the ALJ cited to Dr. Brown's report, which noted Plaintiff's antalgic gait, frequently throughout the decision. AR 22-23.[11] Furthermore, the ALJ need not be technically perfect in her analysis of the medical record. *See Keyes-Zachary*, 695 F.3d at 1166.

Even if the ALJ erred by not addressing the antalgic gait, it is harmless. Plaintiff does not identify any particular functional limitation that his antalgic gait affects. Instead, he argues that when evidence of Plaintiff's antalgic gait, combined with evidence the ALJ did acknowledge, is considered, "it would seem there was in fact more than sufficient evidence to support Dr. Nickels' opinions from a physical perspective." Pl.'s Br. 17. Again, the Court cannot reweigh the evidence. *See Bowman*, 511 F.3d at 1272.

Plaintiff also claims the ALJ did not address findings of abnormalities in Plaintiff's extremities. Pl.'s Br. 16-17 (*citing* AR 263-266, 268, 271, 325-336, 338-339, 343-344, 347-348). On the cited pages, a box was checked under a column entitled "abnormal" for extremities. It is unclear how Plaintiff's extremities were abnormal or any functional limitations resulting from such abnormalities. Further, the ALJ addressed various issues with Plaintiff's extremities in detail in the decision. There is no error with regard to the ALJ's handling of Plaintiff's extremities.

---

[10] On March 24, 2014, Dr. Kevin W. Hargrove, M.D., noted Plaintiff had "severe antalgia." AR 256. On July 7, 2014, Dr. Brandon Brown, M.D., stated that Plaintiff "was noted to have a gait with a narrow base with a good pace that is antalgic," but that Plaintiff did not utilize an ambulatory aid. AR 313. A February 21, 2015 medical record reflects that Plaintiff's ambulation was poor, antalgic, and that he walked bent forward. AR 345.

[11] Furthermore, the ALJ asserted she "considered all symptoms," AR 21, and the Court "take[s] the ALJ at [her] word, unless shown otherwise." *Watts v. Berryhill*, 705 F. App'x 759, 762 (10th Cir. 2017) (unpublished).

10

The ALJ appropriately considered the evidence and the Court finds no reversible error with regard to the consideration of Dr. Nickels' opinions.

B.  **The ALJ's Finding Regarding Plaintiff's Past Relevant Work is Supported by Substantial Evidence**

Plaintiff contends the ALJ erred in categorizing Plaintiff's past relevant work. A claimant bears the burden at step four of proving "his inability to return to his particular former job and to his former occupation as that occupation is generally performed throughout the national economy." *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993). However, in order to make the ultimate finding that a claimant is not disabled at step four, the ALJ must make specific and detailed predicate findings at each of three phases. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). In the first phase, the ALJ is required to evaluate a claimant's RFC. *See id*. In the second phase, the ALJ "must determine the physical and mental demands of the claimant's past relevant work." *Id*. "In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." *Id*. If a claimant can perform his past relevant work, he is not disabled. *See* 20 C.F.R. § 404.1520(f).

There are three possible tests for determining whether a claimant retains the capacity to perform his past relevant work: 1) "whether the claimant retains the capacity to perform a past relevant job based on a broad generic, occupational classification of that job;" 2) "whether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it;" and 3) "whether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy." SSR 82-61, 1982 WL 31387. Here, the ALJ found that Plaintiff could perform his past relevant work pursuant to the third test. AR 24.

Plaintiff contends the ALJ's finding was in error because his past relevant work was in a "composite job." Composite jobs "have significant elements of two or more occupations and, as such, have no counterpart in the DOT." SSR 82-61, 1982 WL 31387. If Plaintiff's past relevant work should have been classified as a composite job, the ALJ could not have relied on the VE's finding regarding Plaintiff's ability to perform his past relevant work as it is performed in the national economy. *See* POMS DI 25005.020(B), https://secure.ssa.gov/poms.NSF/lnx/0425005020.[12] ("A composite job does not have a DOT counterpart, so do not evaluate it at the part of step 4 considering work 'as generally performed in the national economy.'") Instead, if Plaintiff's past relevant work were a composite job, the ALJ would only be able to consider whether Plaintiff could perform work as he actually performed it. Because the VE testified Plaintiff could not perform his past relevant work as he actually performed it, AR 76, the distinction is important.

Plaintiff completed a questionnaire regarding his past jobs, including those in which he self-identified as a "general sales manager." AR 201-203. Plaintiff indicated that part of his duties included selling cars. *Id.* The DOT description of a sales manager's duties does not include the direct sales of products. *See* DOT § 163.167-018, 1991 WL 647311. Therefore, Plaintiff argues that he had a composite job because "a significant aspect" of his work included the duties of an automobile salesperson. Pl.'s Br. 20 (*citing* DOT § 273.353-010).[13] The Court finds Plaintiff's argument is without merit.

---

[12] The Court must "defer to the agency's interpretations stated in the POMS unless they are 'arbitrary, capricious, or contrary to law.'" *Lee v. Colvin*, 631 F. App'x 538, 541, n. 1 (10th Cir. 2015) (unpublished) (*quoting McNamar v. Apfel*, 172 F.3d 764, 766 (10th Cir. 1999)).

[13] Plaintiff also argues that he had a composite job because the VE testified that Plaintiff had transferable skills of giving information and selling. *Id.* (*citing* AR 74). Plaintiff, however, does not explain how the possession of such skills is inconsistent with the job duties of a sales manager.

The facts in this case are similar to that in a case from the United States District Court for the Middle District of Pennsylvania, where a claimant had past relevant work as a fast-food restaurant manager and testified that he also delivered pizzas, answered phones, and unloaded trucks—functions in excess of the DOT description of the job. *Blum v. Berryhill*, No. 3:16-CV-2281, 2017 WL 2463170, at *2, *11 (M.D. Pa. June 7, 2017). The VE testified that the plaintiff could perform the manager's job as generally performed. *Id.* at *3.[14] As in this case, the plaintiff in *Blum* argued that his job was composite because it involved significant elements that were not included in the DOT's description of the manager job. *Id.* at *10. The Court noted that Plaintiff failed to show that the additional duties comprised "main duties" of his past relevant work and also did not make a showing that his past relevant work involved "significant variations" from the DOT's job description as contemplated by SSR 82-61. *Id.* at *11, n.7 (*citing* SSR 82-61, 1982 WL 31387). Because the plaintiff did not argue he could not perform the manager job as generally performed and he did not show he had a composite job, the Court found that the plaintiff's composite-job argument did not require reversal. *Id.* at *11.

Here too, Plaintiff fails to make a showing that selling cars amounted to a "significant element" of a general sales manager such that his past relevant work was a composite job. While Plaintiff indicated he sold cars, he also noted in his description of his past jobs that he served as manager, walked the car lot, and helped others sell cars. AR 201-203. The decision in *Blum* is instructive—a statement by a claimant that he performed activities does not render those duties "significant elements" of his job. Plaintiff points only to a written statement that part of his duties included selling cars. He did not indicate how often he sold cars, he did not testify regarding his

---

[14] The VE also testified that the plaintiff could perform the manager's job as actually performed. *Id.* But the court ultimately found that the ALJ's determination that Plaintiff could do so was not supported by substantial evidence. *Id.* at *10.

13

sale of cars, and testified to additional duties not involving selling cars. AR 59. Furthermore, the ALJ relied on the VE's testimony that Plaintiff's work amounted to that of a sales manager as classified by the DOT. AR 72; *see Newberry v. Berryhill*, No. CV 16-192 CG, 2017 WL 3602036, at *9 (D.N.M. Feb. 23, 2017) ("Although [Plaintiff] described cooking, cleaning, and stocking duties, which suggests a composite job, the VE testified that [Plaintiff] position still fit the definition of "cashier" in the DOT. A VE's testimony is clearly evidence a reasonable mind might accept as adequate to support a conclusion, and the possibility of drawing two inconsistent conclusions from the evidence does not render the ALJ's decision unsupported by substantial evidence." (internal citations and quotations omitted)). As such, the Court finds that the ALJ's finding regarding Plaintiff's past relevant work is supported by substantial evidence and reversal is not required.

### C. The Court Does Not Reach Plaintiff's Remaining Point of Error

Because the Court affirms the ALJ's finding that Plaintiff was not disabled at step four, the Court need not address Plaintiff's step-five arguments. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary.")

## VI. Conclusion

For the reasons set forth, the decision of the Commissioner is AFFIRMED.

ENTERED this 19th day of April, 2018.

_____
BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE